***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion *Page 2 
and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. From July 14, 2005 through July 15, 2005, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties from July 14, 2005 through July 15, 2005, with Plaintiff working as a temporary employee of Defendant.
3. Defendant was self-insured at the time of the alleged injury(ies) giving rise to these proceedings, with Gallagher Bassett Services, Inc. acting as the duly authorized administrator.
4. Plaintiff alleges that he sustained a work injury on July 14, 2005 and July 15, 2005. This is not a stipulation regarding the compensability of Plaintiff's alleged claim for workers' compensation benefits.
5. Plaintiff's average weekly wage will be resolved via a Form 22, by other credible testimony and/or evidence at the hearing of this matter, or by stipulation of the parties. Plaintiff alleges that his average weekly wage is $600.00. Defendant alleges that Plaintiff's average weekly wage is $474.06 per the Form 22.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-trial Agreement; *Page 3 
 b. Stipulated Exhibit Two (2) — Various indexed and paginated exhibits, including North Carolina Industrial Commission forms and filings, Employment Security Commission of North Carolina Appeals Decision, Material Safety Data Sheets (MSDS), Plaintiff's medical records, and Plaintiff's medical bills;
 c. Stipulated Exhibit Three (3) — Notes of Mr. Christopher Kent, Defendant's "Post-Accident Drug and Alcohol Policy," Defendant's "Field Employee Policy Manual," and Plaintiff's personnel file;
 d. Plaintiff's Exhibit One (1) — Plaintiff's sketch of the Mallinckrodt work site;
 e. Defendant's Exhibit One (1) — Prior version of Pre-trial Agreement;
 f. Defendant's Exhibit Two (2) — Additional medical records of Plaintiff;
 g. Defendant's Exhibit Three (3) — Initial Report from Dr. Dennis Darcey;
 h. Defendant's Exhibit Four (4) — Plaintiff's first drug screen results;
 i. Defendant's Exhibit Five (5) — Plaintiff's second drug screen results.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant, and if so, to what workers' compensation benefits is he entitled?
2. Whether Plaintiff's claim is time-barred under N.C. Gen. Stat. § 97-22? *Page 4 
3. Whether Plaintiff's violation of Defendant's established company policies regarding drug testing bars him from indemnity benefits?
4. Whether Defendant is entitled to any credits?
5. Whether Defendant is entitled to conduct an independent medical examination of Plaintiff?
6. Whether Plaintiff should be required to produce a complete set of all medical records preceding the date of his alleged work injury?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years old, with a date of birth of October 16, 1962, and has a most recent employment history of working as an electrician. Plaintiff initially started working with Defendant, which is a skilled labor staffing company who provides carpenters, electricians, and other skilled workers to their clients, in either 2000 or 2001 in the Atlanta, Georgia area. Plaintiff worked periodically for Defendant until September 2005, and was working for Defendant on July 14, 2005 and July 15, 2005.
2. On July 14, 2005 and July 15, 2005, Defendant sent Plaintiff to work at Mallinckrodt, a pharmaceutical manufacturing company, as an electrician. Plaintiff worked in a penthouse area above a building where 4-Aminophenol or Para-aminophenol (PAP) is utilized. On these dates, Plaintiff was installing an exhaust fan located in the penthouse area.
3. Prior to starting work in the penthouse area, Plaintiff and a representative from Inserve, another contractor working for Mallinckrodt, vented the penthouse area for about *Page 5 
10 to 15 minutes. Plaintiff characterized this ventilation as a "release" of PAP. However, the OSHA investigation and related documents concluded that there was not any type of a release of PAP on either July 14, 2005 or July 15, 2005 when Plaintiff was working at the Mallinckrodt facility.
4. In the course of Plaintiff's, work he came into contact with some substance in the penthouse area which produced some skin discoloration. A few days after Plaintiff worked at Mallinckrodt, he claimed to suffer from chest pain, weight loss, headaches, fever, abdominal pain, nausea, vomiting, and some other symptoms, in addition to the skin discoloration. Beginning on July 18, 2005, Plaintiff sought treatment for these other symptoms from various health care providers over the course of more than a year. However, Plaintiff did not receive any medical treatment for the skin discoloration, it did not result in any disability to him, and it resolved in less than two (2) weeks after he worked at Mallinckrodt.
5. Several days after Plaintiff worked at Mallinckrodt, he discussed with several members of Defendant's management his concern that his work at Mallinckrodt exposed him to some substance that caused the numerous medical problems that he had been experiencing, including the skin discoloration. However, Plaintiff was unable to specifically pinpoint to what he might have been exposed that caused these medical problems. One of the members of Defendant's management with which Plaintiff discussed these concerns was Mr. Christopher Kent. Based upon Plaintiff's concern of an occupational chemical exposure, Mr. Kent advised him to complete the necessary incident report form and other documentation required by Defendant in the event he decided to pursue a workers' compensation claim. Plaintiff completed the incident report form and other documentation, but did not file a Form 18 until July 14, 2006, a year after his alleged work injury. Although Plaintiff did not file his Form 18 until a year after his alleged July 2005 work injury, the Full Commission finds, based upon the greater weight of *Page 6 
the evidence, that Defendant had actual notice of Plaintiff's workers' compensation claim when he discussed with Mr. Kent and other members of Defendant's management his concern that he had an occupational chemical exposure at Mallinckrodt several days after the alleged chemical exposure. Plaintiff also informed Defendant's management that he believed this occupational chemical exposure caused the numerous medical problems that he had been experiencing, including the skin discoloration. Plaintiff's untimely written notice of his workers' compensation claim did not prejudice Defendant, as it had actual notice of Plaintiff's claim.
6. In August 2005, Defendant received copies of some of Plaintiff's medical records related to the various disorders that he claimed to be related to an occupational chemical exposure while working at Mallinckrodt in July 2005. These medical records contained laboratory reports indicating that Plaintiff tested positive for marijuana. As a result, Defendant terminated Plaintiff due to the fact that a positive drug test is a violation of their established company policies. Plaintiff then applied for and received unemployment benefits, and also worked at a series of odd jobs.
7. Ms. Wendy Ray Shepherd, the OSHA health compliance officer who investigated Plaintiff's allegation that he suffered an occupational chemical exposure while working at Mallinckrodt in July 2005, testified that based upon the MSDS data, skin discoloration is a possible consequence of direct contact with PAP. However, such discoloration alone is not medically significant unless the PAP is actually absorbed through the skin, and if PAP is absorbed through the skin, a disorder called methemoglobinemia could result. Ms. Shepherd further explained that it is typical for employees working in the presence of PAP to experience some skin discoloration, but that she deemed this to be primarily a cosmetic issue, and there were no serious health concerns related to skin discoloration. After a thorough investigation, *Page 7 
including visiting the penthouse area where Plaintiff worked at Mallinckrodt in July 2005 and conducting several tests, Ms. Shepherd opined that she could not conclude that Plaintiff's work at Mallinckrodt exposed him to PAP. Further, Ms. Shepherd's investigation concluded that there was no over-exposure to any of the substances for which she conducted tests. As a result, OSHA did not cite Mallinckrodt for any type of violation.
8. Dr. Woodward Burgert, III, a family medicine specialist, treated Plaintiff for some of the various disorders that he claimed to be related to an occupational chemical exposure while working at Mallinckrodt in July 2005 and reviewed the MSDS data related to PAP. On July 20, 2005, Dr. Burgert first saw Plaintiff after he completed his work at Mallinckrodt on July 15, 2005. At that time, Dr. Burgert noted that Plaintiff did have some skin discoloration; however, this skin discoloration was not present at the next visit on July 26, 2005. Based upon Dr. Burgert's examination and treatment of Plaintiff, as well as his review of the MSDS data related to PAP, he opined that PAP is "not a highly toxic substance," that Plaintiff did not have symptoms consistent with methemoglobinemia, and that his overall presentation "point[ed] to little systemic exposure" to PAP by way of absorption through the skin, especially since his acetaminophen testing was negative.
9. Dr. Burgert was of the opinion that Plaintiff's work at Mallinckrodt in July 2005 did not cause any of the other symptoms which Plaintiff attributed to an occupational chemical exposure, including his complaints of chest pain, weight loss, headaches, fever, abdominal pain, nausea, vomiting, and some other symptoms. Dr. Burgert explained that if a chemical exposure caused any of these symptoms, then they would resolve "within days, at the most." However, Plaintiff's symptoms persisted for well over a year. With respect to Plaintiff's gastrointestinal symptoms, Dr. Burgert opined, based upon review of laboratory and other testing, that gastritis *Page 8 
was the cause of these symptoms, rather than any type of chemical exposure. The Full Commission gives great weight to the to the opinion testimony of Dr. Burgert.
10. Dr. Dennis Darcey, an occupational medicine specialist, examined Plaintiff at his request, and also reviewed the MSDS data related to PAP and various other chemicals. Based upon Dr. Darcey's examination and treatment of Plaintiff, as well as his review of the MSDS data related to PAP and various other chemicals, he opined that Plaintiff developed skin discoloration causing irritation that resolved within a week. Per Plaintiff's report to him, Dr. Darcey opined that the skin discoloration was most likely due to PAP exposure, with possible exposure to acetaminophen, oxycodone, and/or other unknown substances. Dr. Darcey further opined that Plaintiff's gastrointestinal symptoms, history of costochondritis, and the other symptoms he attributed to an occupational chemical exposure were not work-related. The Full Commission gives great weight to the to the opinion testimony of Dr. Darcey.
11. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to establish that he suffered an exposure to PAP that resulted in symptoms beyond some skin discoloration and minor irritation. The Full Commission further finds that Plaintiff failed to establish that the other symptoms which he attributed to an occupational chemical exposure, including his complaints of chest pain, weight loss, headaches, fever, abdominal pain, nausea, vomiting, and some other symptoms are related to any chemical exposure at Mallinckrodt on either July 14, 2005 or July 15, 2005.
12. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff sustained no disability as a result of any chemical exposure he had at Mallinckrodt on either July 14, 2005 or July 15, 2005. Plaintiff's skin discoloration and minor irritation resolved *Page 9 
within a matter of days, it did not require any type of medical treatment, and Plaintiff did not miss any work as a result of this skin discoloration and minor irritation.
13. Because Plaintiff failed to meet his burden of proving that he sustained a compensable work injury resulting in disability, the Full Commission need not address the issues of whether Plaintiff's termination was due to violation of established company policies regarding drug testing, whether Defendant is entitled to any credits, whether Defendant is entitled to conduct an independent medical examination of Plaintiff, or whether Plaintiff should be required to produce a complete set of all medical records preceding the date of his alleged work injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that he sustained a compensable injury arising out of and in the course and scope of his employment with Defendant on either July 14, 2005 or July 15, 2005. N.C. Gen. Stat. § 97-2(6) (2008).
2. Although Plaintiff did sustain some skin discoloration and minor irritation as a result of his work at Mallinckrodt on July 14, 2005 and July 15, 2005 which is suggestive of an exposure to PAP, the mere fact of injury and/or mere documentation of a symptom are not proof of a compensable work injury or exposure.Reams v. Burlington Indus., 42 N.C. App. 54, 55,255 S.E.2d 586, 587 (1979).
3. Plaintiff failed to prove that his work at Mallinckrodt on either July 14, 2005 or July 15, 2005 caused any of the other symptoms which Plaintiff attributed to an occupational chemical exposure, including his complaints of chest pain, weight loss, headaches, fever, *Page 10 
abdominal pain, nausea, vomiting, and some other symptoms. .Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000).
4. Because Plaintiff missed no work as a result of his skin discoloration and minor skin irritation, Plaintiff failed to prove disability under the Russell v. Lowes Product Distribution
test. Russell v. Lowes Product Distribution, 108 N.C. App. 762,765, 425 S.E.2d 454, 457 (1993).
5. Defendant had actual notice of Plaintiff's workers' compensation claim when he discussed with Mr. Christopher Kent and other members of Defendant's management his concern that he had an occupational chemical exposure at Mallinckrodt that caused the numerous medical problems that he had been experiencing, including the skin discoloration. Plaintiff's workers' compensation claim is not time-barred by the lack of written notice. Richardson v. MaximHealthcare/Allegis Group, 362 N.C. 657, 669 S.E.2d 582 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for a July 14, 2005 or July 15, 2005 injury hereby DENIED.
2. Defendant shall pay the costs of these proceedings.
This the ___ day of December 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER